[S. F. No. 16392. In Bank.—May 3, 1940.]

THEODORE CANAVARRO et al., Appellants, v. THEATRE & AMUSEMENT JANITORS UNION LOCAL No. 9 (an Unincorporated Association) et al., Defendants and Respondents.

APARTMENT HOUSE EMPLOYEES UNION LOCAL No. 14 (an Unincorporated Association) et al., Cross-Complainants and Respondents, v. BUILDING SERVICE EMPLOYEES INTERNATIONAL UNION (an Unincorporated Association) et al., Cross-Defendants and Respondents; CHARLES HARDY et al., Interveners and Appellants.

Picard & McCarty for Appellants.

James L. Feely, *Amicus Curiae,* on Behalf of Appellants.

I. B. Padway for Respondents.

GIBSON, J.—This is a petition for a writ of *supersedeas,* arising out of a controversy between the officers of certain labor union locals and the officers and representatives of their international union. Upon the filing of the petition this court issued an order to show cause why the writ should not issue, and stayed all proceedings pending the hearing on said order.

On December 27, 1939, plaintiffs and appellants, members of certain local unions, brought an action in the superior court for an injunction and an accounting, against various local unions, the officers thereof, the international union, its president, George Scalise, and others. The main charge in

the complaint is that the local unions are paying per capita taxes to the international union, but that the president thereof, in violation of its constitution, refuses to furnish the executive board with a statement of expenditures, and is wasting the money. It is also alleged that the president and others have entered into a conspiracy to prevent local unions from demanding an accounting, and in pursuance thereof purported to suspend from office Charles Hardy, duly elected fourth vice-president and western representative, because of his demands therefor, replacing him with one Meyer Lewis. Lewis, it is further alleged, threatens to take possession of the documents and property of the local unions. The prayer is that the defendant local unions and officers be restrained from delivering the documents or property and from paying the funds to the international union; that the international and its president be restrained from removing Hardy from his office; that the international and its president be compelled to account; and that a referee be appointed to take the accounting.

On January 9, 1940, some of the local unions and officers who were named as defendants filed an answer and cross-complaint which seek the same relief as does the complaint.

On January 17, 1940, Hardy and his two sons, who are officials of local unions, intervened in the action, also seeking substantially the same relief, with an additional prayer. It appeared that Lewis, sent here by President Scalise to replace Charles Hardy, was instructed to hear and try charges of disloyalty, false propaganda against the international union, and other alleged improper conduct on the part of the Hardys. The record of such trial was to be sent to President Scalise for decision. Notice to that effect was sent to the Hardys. Accordingly, in their complaint they prayed that the threatened trial of them by Lewis and Scalise should be enjoined pending the trial of the main proceeding on the merits.

The trial court issued a temporary restraining order and directed defendants to show cause why a preliminary injunction should not be granted. A hearing was had and the court made its order, granting in part the injunctive relief sought, but refusing to restrain the trial of the Hardys.

Plaintiffs and interveners appealed from certain portions of the order.

The present petition for *supersedeas* seeks to prevent the threatened trial of the Hardys pending the determination of the main case on the merits.

■ The law governing the issuance of writs of *supersedeas* in injunction cases has been fully discussed by this court in recent cases, and needs no detailed exposition here. A *mandatory* injunction is automatically stayed by an appeal, and if the trial court should proceed to enforce it notwithstanding this stay, *supersedeas* may issue. A *prohibitory* injunction is not stayed by the taking of an appeal, and *supersedeas* will not be granted except in rare circumstances. (See *Ohaver* v. *Fenech,* 206 Cal. 118 [273 Pac. 555]; *Feinberg* v. *Doe,* 14 Cal. (2d) 24 [92 Pac. (2d) 640].) Recognizing these settled rules, petitioners contend that the court's order directs that the Hardys be tried, and in this respect is substantially a mandatory injunction which was stayed by the appeal.

■ To answer this contention requires a consideration of the provisions of the decree, and we find that the court ordered the following: (1) Those portions of the temporary restraining order which "interfere with or prevent the Executive Board" from trying the Hardys, on the charges made in the manner provided by the constitution and by-laws of the international union, be "set aside and discharged". (2) Provided, however, that board members Scalise (president) and Burke (third vice-president) be restrained from sitting on the board or in any way participating in the trial, "for the reason that they investigated said charges and caused the same to be made"; and "no one but members of the Executive Board not herein disqualified participate as judges in said trial". (3) The trial shall be "prompt and expeditious" in order to permit an appeal to the international convention in May, 1940; and for the convenience of the Hardys their residence (San Francisco), shall be the place of trial. (4) Because of the present illness of two members of the board, "it is ordered that said trial shall be conducted in the following manner": three members "shall hold and conduct the hearing in San Francisco . . . to commence not later than Tuesday, March 5, 1940"; notice of place of trial shall be

furnished by March 4; a stenographic record shall be made and sent to the other two members, who may participate after reading it. (5) The charge of disseminating false propaganda against the executive board is excluded and the board restrained from trying it. (6) The Hardys shall be permitted to participate as delegates in the convention, if elected. (7) The board "are hereby restrained from conducting said trial in any manner or place save as hereinabove provided".

Petitioners, as stated above, contend that this was "an affirmative and mandatory order" directing the three designated members of the executive board to try the Hardys in a certain manner at a certain time. They rely upon the quoted portions of the order, *supra,* and on inferences from the asserted facts that the constitution of the union does not authorize trial by the board, that no previous attempt had been made to try the Hardys before the board. Thus they reach the conclusion that the only authority for the trial comes from the court's order, and that consequently that order, laying down the conditions under which the trial shall be held, is in effect a mandatory injunction directing that a trial be held.

The argument is not convincing. Whether the union's constitution authorizes, expressly or by implication, the discipline of members or officers after trial on charges filed, is a problem not before us. The circumstances show quite clearly that respondents, the international officers, did claim such a right, and proceeded to act under it. It was that action under that purported authority which petitioners sought to prevent by applying to the trial court for an injunction. It was not respondents who sought the aid of the court; they did not and do not now claim authority to hold the trial by reason of the court's order.

Some of the quoted portions of the order, if completely separated from their context and read without any knowledge of the circumstances leading thereto, might suggest that the court was ordering that the Hardys be tried. But reading the entire order in the light of the background of the case, its purpose and effect are unmistakable. The court, recognizing the authority of the international union to take the disciplinary measures in question, but cognizant of the claim of

unfairness made by petitioners, sought to place limitations upon the conduct of any such trial, practically all in the interests of petitioners. Thus, those who had brought the charges were disqualified from hearing them; the order required that a report be made of the proceedings, with right of appeal to the convention; and the court insisted upon a speedy hearing to safeguard this right of appeal. The provision that trial be before impartial members of the board was in lieu of the attempted trial before Lewis and Scalise. Petitioners were not initially forced to trial by the court's order. They were given a right to insist that any trial, if held, be conducted in a manner consistent with principles of fairness and impartiality.

Indeed, the order can hardly be interpreted any other way. There was no issue raised, nor evidence presented, on the authority of the court to order petitioners to submit to trial. It can hardly be imagined that the court would deliberately make such an order, requested by neither party, and supported by neither pleading nor proof. If, for example, respondents should choose to abandon the proceedings entirely, could it be said that the court would have power to punish them for contempt? Yet. if the court ordered a trial, they would have to comply on pain of such punishment. The result would then be that without the request of either party, both would be forced to take action which each opposed. These speculations only serve to emphasize the unreasonableness of petitioners' theory.

Since there was, therefore, no mandatory injunction, the order of the court was not stayed by the appeal. Nor have petitioners made any showing which would warrant our issuance of *supersedeas* on any other ground. As a matter of fact, the opposite is true. Petitioners sought, in the lower court, to restrain their trial. The court gave relief only to the extent of prescribing conditions under which the trial could be held, but refused to enjoin it altogether. If we issue *supersedeas*, as requested, its effect would be to prevent the trial, thus granting the injunction which the trial court denied. We have on several occasions pointed out that this is not a proper function of the writ of *supersedeas*. (See *Seltzer* v. *Musicians' Union*, 12 Cal. (2d) 718 [87 Pac. (2d)

699]; *McCann* v. *Union Bank*, 4 Cal. (2d) 24 [47 Pac. (2d) 283]; *Wollenshlager* v. *Riegel*, 186 Cal. 622 [200 Pac. 726].)

The writ is denied.

Houser, J., Curtis, J., Carter, J., and Waste, C. J., concurred.

Edmonds, J., concurred in the judgment.

SHENK, J., Concurring and Dissenting.—I concur in the order denying the writ of *supersedeas* for the reason that the portions of the order of the trial court from which an appeal was taken and which are claimed by the petitioners herein to be mandatory became ineffective by lapse of time. The trial court directed that the contemplated trial of the petitioners be conducted before three members of the general executive board and be commenced not later than March 5, 1940. That time had passed before the hearing on the application for the writ was had in this court, and the directions to hold the trial on a day that had long since passed became ineffective.

But I dissent from the holding that the portions of the order of the trial court directing the time, place and manner of the trial were not mandatory. In language too plain to be misunderstood the court assumed to direct the time when, the place where, and the manner in which the trial should be had and to order a record thereof made and certified to absent members of the board. The consequences of this language cannot be minimized by assuming that the trial court could not have intended its obvious effect, inasmuch as it went beyond the issues then before the court. Whatever the reasons, the order was made and is reviewable on appeal.

Nor can I accede to the conclusion that the writ of *supersedeas*, if issued, would have the effect of "granting the injunction which the trial court denied". The trial court did not deny a temporary injunction. It granted one restraining the board from "conducting the trial in any manner or place save as hereinabove provided". The fact that the operation of the writ, if issued, would not be upon the prohibitory features of the order appealed from, but would operate only to stay the effect of the provisions of the order which are

clearly mandatory, is the natural consequence of the trial court's order and cannot affect the application of the well-established rules of law invoked by the petitioners.